UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
IN RE APPLICATION OF USA PURSUANT   )     ML No: 22-710
TO 18 U.S.C. § 3512 FOR ORDER FOR      )
COMMISSIONER'S APPOINTMENT FOR    )
FRAUD INVESTIGATION                  )
                                )
_____)

*Reference:*    *DOJ Ref. # CRM-182-81604*

APPLICATION OF THE UNITED STATES FOR AN ORDER
<u>FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512</u>

The United States of America, moving by and through its undersigned counsel,

respectfully submits under seal this *ex parte* application for an Order, pursuant to 18 U.S.C. §

3512, appointing the undersigned attorney Liudmila Batista, Trial Attorney, Office of

International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor

subsequently designated by the Office of International Affairs), as a commissioner to collect

evidence and to take such other action as is necessary to execute this and any subsequent,

supplemental requests for assistance with the above-captioned criminal matter from Germany.

In support of this application, the United States asserts:

<u>RELEVANT FACTS</u>

1.     The Central Authority of Germany, the Federal Office of Justice, submitted a

request for assistance (the Request) to the United States, pursuant to the Treaty Between the

United States of America and the Federal Republic of Germany on Mutual Legal Assistance in

Criminal Matters, U.S.-F.R.G., Oct. 14, 2003, S. TREATY DOC. NO. 108-27 (2004), as

supplemented by the Supplementary Treaty to the Treaty Between the United States of America

and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, U.S.-F.R.G., April 18, 2006, S. TREATY DOC. NO. 109-13 (2006) (the Treaty).

2. As stated in the Request, the Frankfurt am Main Public Prosecutor's Office in Germany is investigating Jurgen Kurt Ernst Wagentrotz (Wagentrotz), former Executive Board Member of Oil & Gas Invest AG, and others for fraud and operating a banking business without a license, which occurred between in or about January 2010 and August 2018, in violation of the criminal law of Germany, specifically, Section 54 of the German Banking Act and Section 263 of the German Criminal Code. Under the Treaty, the United States is obligated to assist in response to the Request.

3. According to German authorities, between January 2010 and February 2015, Oil & Gas Invest AG, a German company, allegedly offered investors lucrative contracts for fully secured subordinated loans with a promised yearly return of 9 to 12 percent interest for supposed oil extraction projects in the U.S. In addition to a signed repayment guarantee by Wagentrotz, investors would receive "crude oil certificates" as a further security on their investment. Per the repayment guarantee provided by Wagentrotz, he personally guaranteed each investor the timely payment of the agreed annual interest as well as the complete repayment of the investment at the end of the agreed upon term. In or about February 2015, the German Federal Financial Supervisory Authority (BaFin) investigated Oil & Gas Invest AG and determined that their business model violated the German Banking Act as it operated as a financial institution without proper licensing.

4. As results of BaFin's investigation, Oil & Gas Invest AG presumably changed its investment model to comply with the German Banking Act. Specifically, instead of the fully secured subordinated loans, Oil & Gas Invest AG offered investors corporate bonds designated

2

as a partial bearer debenture with a minimum investment amount of EUR 1,000 (approximately USD 1,131) at an annual interest rate between 8.25 and 11.25 percent for a fixed term from February 15, 2016 to February 14, 2021.  Per Oil & Gas Invest AG, 45 percent of their investors accepted to switch their investment to the new business model.  On August 31, 2018, Oil & Gas Invest AG filed for bankruptcy.

5.      German authorities' investigation revealed that Oil & Gas Invest AG mislead investors about the actual existence of the exploitable oil deposits in the United States and the likelihood of substantial profits.  Oil & Gas Invest AG's investors presentation claimed secured and/or confirmed oil deposits worth billions of dollars in the United States.  However, according to expert evaluations, the existence of the oil deposits or predicted production volume and profits have not been certified with certainty.  Instead, the oil reserves in the alleged drilling region are only suspected.

6.      When bankruptcy proceedings were initiated, Oil & Gas Invest AG had collected around EUR 22.19 million (approximately USD 25,654,336) from about five hundred investors. Financial records show that between December 14, 2010 and April 19, 2014, from one of its German bank accounts, Oil & Gas Invest AG transferred USD 9,1,00,000 to Fifth Third Bank account number XXXXXX8378, held in the name of OGI Holding Corporation, located in the United States.  OGI Holding Corporation was a subsidiary of Oil & Gas Invest AG.  OGI Holding Corporation also allegedly received EUR 4,450,000 (approximately USD 5,184,695) from another bank account held by Oil & Gas Invest AG in Germany and where investors' funds had been deposited.  Between in or about April 2015 and May 2015, OGI Holding Corporation transferred back to Germany approximately USD 4.7 million to settle the investors' loan

agreements that had been objected by the BaFin investigation.  The whereabouts of the rest of the money transferred to OGI Holding Corporation is still unknown.

7.      Lastly, Oil & Gas Invest AG made the following transfers to the United States from Commerzbank Frankfurt account XXXXXXXXXXXXXXX9200: on September 7, 2012 and October 4, 2012, USD 1,000,000 and USD 4,100,000, respectively, to JP Morgan Chase Bank account XXXXX9010, held in the name of Volume Acquisitions, LLC; on September 7, 2012, USD 1,000,000 and USD 250,000 to JP Morgan Chase Bank accounts XXXXX7670 and XXXXX8428, respectively, held in the name of Volume Acquisitions, LLC; and on September 19, 2012, USD 750,000 to JP Morgan Chase Bank account XXXXX9699, held in the name of Volume Acquisitions, LLC.  It is unknown whether the funds transferred to Volume Acquisitions, LLC were intended for the purported oil extraction venture.

8.      To further the investigation, German authorities have asked U.S. authorities to provide bank records pertaining to Fifth Third Bank account number XXXXXX8378, and JP Morgan Chase Bank accounts XXXXX9010, XXXXX7670, XXXXX8428, and XXXXX9699.

<u>LEGAL BACKGROUND</u>

9.      A treaty[1] constitutes the law of the land.  U.S. Const. art. VI, cl. 2.  The provisions of a treaty have equal footing with acts of Congress and are binding on the courts.  <u>See</u> <u>Asakura v. City of Seattle</u>, 265 U.S. 332, 341 (1924); <u>United States v. The Peggy</u>, 5 U.S. 103 (1801); <u>United States v. Emuegbunam</u>, 268 F.3d 377, 389 (6th Cir. 2001).  The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it."  <u>United States v. Stuart</u>, 489 U.S. 353 (386) (1989) (internal quotations marks omitted).  To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

4

the statute.  Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

10.    The United States and Germany entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters.  See Treaty pmbl. The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. Article 1.  In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests. Article 19(3) ("the courts . . . shall have . . . authority to issue such orders . . . as are necessary to execute the request.").

11.    When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

> \*                    \*                    \*

> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.

> \*                    \*                    \*

> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

12.     Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

13.     An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

14.     Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

15.     The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the Federal Office of Justice, the designated Central Authority in Germany and seeks assistance in the investigation of fraud and operating a banking business without a license – criminal offenses in

Germany.  The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records, falls squarely within that contemplated by Section 3512 and the Treaty.  Finally, this application was properly filed in the District of Columbia.

16.    This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

17.    When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance.  Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987).  Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

18.    Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Liudmila

Batista, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, to do so in a manner consistent with the intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____
Liudmila Batista
Trial Attorney
KY Bar Number 94460
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 200
Washington, D.C. 20530
(202) 616 - 2461
Liudmila.Batista@usdoj.gov